**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **PAPA AIR LLC, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:19-CV-01713-RDP** |
| | } | |
| **CAL-MID PROPERTIES LP, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

**MEMORANDUM OPINION**

Before the court are the following motions: Plaintiffs' Motion for Summary Judgment (Doc. # 34), Defendant's Motion for Summary Judgment (Doc. # 37), and Plaintiffs' Motion to Strike (Doc. # 50). The Motions have been fully briefed (Docs. # 35, 38, 40, 42, 43, 44, 46, 47, 49, 50, 51, 53, 54) and are ripe for decision. For the reasons discussed below, Plaintiffs' Motion for Summary Judgment (Doc. # 34) is due to be granted in part and denied in part; Defendant's Motion for Summary Judgment (Doc. # 37) is due to be granted in part and denied in part; and Plaintiffs' Motion to Strike (Doc. # 50) is due to be denied as moot.

## I.    Background[1]

Plaintiffs Papa Air, LLC and Josh Askew filed this action for declaratory judgment against Defendants Cal-Mid Properties, LP and Hydinger Stewart & Chew Commercial Properties, LLC. (Doc. # 1). Papa Air is a Wyoming limited liability company owned by Askew. (Doc. # 35 at 2). Askew is an individual resident of Georgia. (Doc. # 1-1). Cal-Mid is a New Jersey limited

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

partnership that leases property to others in Jefferson County, Alabama. (Doc. # 5 at 9). Hydinger Stewart is an Alabama limited liability company located in Birmingham, Alabama. (Doc. # 1 at 1).

Papa Air and Askew originally filed this action in Jefferson County Circuit Court against Cal-Mid and Hydinger. (Doc. # 1-1 at 3-6). On October 18, 2019, before Plaintiffs served either Defendant, Cal-Mid filed a notice of removal to this court. (Doc. # 1). Plaintiffs responded by filing a motion for remand predicated on two arguments: (1) "snap" removal (a procedural move by which a defendant bypasses § 1441(b)(2)'s resident-defendant rule by removing a case before service) is improper; and (2) Hydinger is a resident-state defendant who was not fraudulently joined. (Doc. # 3).

The court denied the motion for remand, concluding that Plaintiffs' arguments were off the mark. (Doc. # 23). The court noted that there was no binding decision on the subject of snap removal. (*Id.* at 5). However, every circuit court -- including the Eleventh Circuit in an unpublished opinion -- that had addressed the topic had decided that the plain language of § 1441(b)(2) permitted removal of a case by a defendant before service of process. (*Id.* at 6-7). After an independent analysis of § 1441(b)(2), the court held that Cal-Mid's removal of this action was proper. (*Id.* at 9-11). The court also held that, on the limited record, it was not able to determine whether Hydinger was fraudulently joined but that the parties could revisit the issue in a Rule 12 or Rule 56 motion if appropriate. (*Id.* at 12). Eventually, after conducting a mediation, the parties stipulated to the dismissal of Hydinger with prejudice. (Docs. # 32, 33).

This case involves a contested lease for premises in the City of Midfield, Alabama. (Doc. # 1-1 at 4). Although there is some subtext and context to each of these points, these are some of the key allegations in this dispute. On or about, March 22, 2019, the parties executed the contested

lease. (*Id.*).[2] Papa Air contends it entered the lease for the purpose of operating an electronic bingo facility. (Doc. # 35 at 3). Notwithstanding a long history of the State of Alabama prohibiting such activities, the City of Midfield, by local ordinance, had seemingly cracked the door for bingo within its municipal jurisdiction. (*See id.*; Doc. # 40 at 7). However, the same day that Papa Air executed the lease, Cal-Mid learned that the local district attorney issued a cease-and-desist letter to electronic bingo operators in the area. (Doc. # 35 at 5). And shortly after that, on April 3, 2019, Alabama's Attorney General sent a cease-and-desist demand to Midfield, stating that its ordinance permitting electronic bingo violated Alabama's Constitution and that electronic bingo "machines w[ould] not be allowed to operate in Jefferson County or in your city." (*Id.* at 6; Doc. # 36-5).

On April 11, 2019, Askew emailed Charles Kramer (the president of Brookhill Management Corporation, which manages the Midfield Plaza Shopping Center for Defendant). (Doc. # 35 at 3, 6). Askew informed Brookhill Management that Papa Air no longer needed to rent the premises "because of the inability to operate the business." (*Id.*). Papa Air did not seek Cal-Mid's consent to utilize the premises for another purpose; Papa Air did not try to use the premises for one of Askew's other business ventures; and Papa Air did not attempt to find a subleasee for the premises. (Doc. # 38 at 12). In response, Cal-Mid sent a demand letter for $1,000,000. Thereafter, Papa Air abandoned the premises and commenced a declaratory judgment action seeking a ruling that the lease was void from its inception. (Doc. # 35 at 7). Cal-Mid asserted four counterclaims against Papa Air and Askew: (1) breach of contract against Papa Air; (2) trespass against Papa Air; (3) breach of personal guaranty against Askew; and (4) a declaratory judgment claim. (Doc. # 5 at 11-17).

---

[2] Between March 22 and April 11 there are disputed facts concerning the timing of Defendant's signing and delivery of the lease. However, as explained below, these facts are not material to the current controversy because the formation of the lease (notwithstanding the allegations about electronic bingo) has been judicially admitted by both parties in the pleadings.

## II.      Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on his allegations made in the complaint; instead, as the party

bearing the burden of proof at trial, he must come forward with at least some evidence to support

each element essential to his case at trial. See *Anderson*, 477 U.S. at 252. "[A] party opposing a

properly supported motion for summary judgment 'may not rest upon the mere allegations or

denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue

for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be

granted if the non-moving party's evidence is merely colorable or is not significantly probative."

*Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S.

at 250-51).

The Eleventh Circuit has interpreted *Celotex* to require that, as to issues on which the

nonmovant would bear the burden of proof at trial, a

> moving party is not required to support its motion with affidavits or other similar
> material negating the opponent's claim in order to discharge this initial
> responsibility. Instead, the moving party simply may show [ ]—that is, point[ ] out
> to the district court—that there is an absence of evidence to support the non-moving
> party's case. Alternatively, the moving party may support its motion for summary
> judgment with affirmative evidence demonstrating that the non-moving party will
> be unable to prove its case at trial.

*Fitzpatrick*, 2 F.3d at 1115 (quoting *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1437

(11th Cir. 1991)). And, where the moving party has met this initial burden by showing that there

is an absence of evidence supporting the nonmoving party's case, the nonmoving party must

> respond in one of two ways. First, he or she may show that the record in fact
> contains supporting evidence, sufficient to withstand a directed verdict motion,
> which was "overlooked or ignored" by the moving party, who has thus failed to
> meet the initial burden of showing an absence of evidence. Second, he or she may
> come forward with additional evidence sufficient to withstand a directed verdict
> motion at trial based on the alleged evidentiary deficiency.

*Id*. (internal citations omitted).

If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact: *i.e.,* facts that would entitle it to a directed verdict if not controverted at trial. *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251- 52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## III.    Analysis[3]

Papa Air and Askew have struggled mightily to create a genuine issue of material fact concerning the validity of the lease, but any fact issues go exclusively to damages. Moreover, their arguments stand in clear conflict with admissions they made in their pleadings. And finally,

---

[3] The parties have stipulated that Alabama substantive law applies. Therefore, the court will apply Alabama -- rather than New York -- law to each issue. Nevertheless, the court notes, as to the lease (which lacked a choice-of-law provision), there is a strong argument that New York substantive law applies. However, further discussion would be merely academic because (1) the parties have stipulated that Alabama law controls and (2) application of Alabama and New York law would yield the same result.

Plaintiffs' argument that the lease agreement is void *ab initio* is off the mark as a matter of law.

So, after careful review, the court concludes that both Plaintiffs' and Defendant's Motions for

Summary Judgment are due to be granted in part and denied in part.

### A.      In Their Pleadings, the Parties Admitted to Entering a Contract

"[J]udicial admissions are proof possessing the highest possible probative value." *Best*

*Canvas Prods. & Supplies, Inc. v. Ploof Trucking Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983).

In general, a party is bound by the admissions in its pleadings. *Cooper v. Meridian Yachts, Ltd.*,

575 F.3d 1151, 1177 (11th Cir. 2009). "Indeed, facts judicially admitted are facts established not

only beyond the need of evidence to prove them, but beyond the power of evidence to controvert

them." *Id.* at 1178 (quoting *Hill v. Federal Trade Comm'n*, 124 F.2d 104, 106 (5th Cir.1941)).

In their Complaint for Declaratory Judgment, Plaintiffs alleged that:

On or about March 22, 2019, the Parties executed a lease entitled "Shopping Center
Lease Agreement" for the premises located in Midfield Center Shopping Center in
Midfield, Jefferson County, Alabama. A copy of the lease is attached hereto as
Exhibit A. The "sole purpose" of the lease was the operation of "Electronic Bingo
and for no other purpose …" (emphasis in original). The lease was personally
guaranteed by Plaintiff Askew.

(Doc. # 1-1 at 4). Defendant Cal-Mid denied that electronic bingo was the sole purpose of the lease

but otherwise admitted the other allegations in the paragraph (*i.e.*, that the parties executed a lease).

(Doc. # 5 at 4). Plaintiffs brought this action in state court to determine "whether the subject lease

violates state law." (Doc. # 1-1 at 5). Plaintiffs only basis for asserting that the lease was invalid

is that because electronic bingo is illegal in Alabama the lease was void. (*See id.* at 3-6).

In its responsive pleading, Cal-Mid filed a counterclaim that consists of a breach of contract

and trespass claim against Papa Air, a breach of personal guaranty claim against Askew, and a

declaratory judgment claim.[4] (Doc. # 5 at 13-17). In the fact section of the counterclaim, Cal-Mid alleged that:

> On or about March 22, 2019, Cal-Mid and Papa Air entered into a Lease Agreement … for a 45,000 square feet store … located at 40 Phillips Drive, in the City of Midfield, Alabama by which Papa Air agreed to the terms of the Lease ….

(*Id.* at 11). Plaintiffs (Papa Air and Askew) again responded by asserting that the sole purpose of the lease was to operate an electronic bingo facility and that the lease was void *ab initio*. (Doc. # 16 at 3). Plaintiffs have otherwise admitted that the parties entered into the contested lease. (*Id.*). While the lease attached to Plaintiffs' complaint was only signed by Askew (Doc. # 1-1 at 8-62), the lease attached to Defendant's counterclaim was signed by both Askew and a Cal-Mid representative. (Doc. # 5-1). In sum, although the parties admitted in the pleadings that they executed/entered into a lease, Plaintiffs now dispute the validity of the lease based solely on their contentions that the purpose of the lease made the agreement void *ab initio*.

The court requested supplemental briefing from the parties regarding whether Plaintiffs admitted in their pleadings that the lease was entered into by the parties.[5] (Doc. # 45 at 1). Plaintiffs supplied two brief responses: (1) Plaintiffs argue that they admitted there was an executed lease but that they did not admit the lease was a valid, binding, or enforceable contract; and (2) Plaintiffs note that the lease document that they attached to their complaint was not signed by Defendant. (Docs. # 46 at 10; 49 at 6-7). However, both of these arguments miss the mark.

---

[4] The court notes that Defendant's Counterclaim Complaint is an example of the first ("containing multiple counts where each count adopts the allegations of all preceding counts") and third type ("not separating into a different count each cause of action of claim for relief") of shotgun pleading described in *Weiland v. Palm Beach County Sheriff's Office*. 792 F.3d 1313, 1322-23 (11th Cir. 2015).

[5] The court requested the supplemental briefing after noticing that Plaintiffs attempted to place the formation of the contract at issue within the fact and conclusion sections of their brief in support of summary judgment. (*See* Doc. # 35). If at any time during discovery Plaintiffs learned that they had an additional argument for the unenforceability of the lease, the proper avenue for raising that claim would have been a motion to amend the pleadings rather than disguising the argument in the fact and conclusion sections of their summary judgment brief.

Black's Law Dictionary defines "execute" as follows: "[t]o make (a legal document) valid by signing; to bring (a legal document) into its final, legally enforceable form." Black's Law Dictionary (11th ed. 2019). Therefore, Plaintiffs' first argument is internally inconsistent. The very definition of an executed contract is an agreement that is made valid by signing or one that is final and legally enforceable. Plaintiffs' second argument is also wholly at odds with admissions they made in the pleadings. Plaintiffs admitted to entering into the lease in their answer to Defendant's counterclaim complaint, which contained a copy of the lease signed by both parties.

Thus, the court concludes that Plaintiffs' statement in their complaint that the parties executed the contested lease (as well as the admission in their answer to the counterclaim that they "entered into" the signed lease) constitute a judicial admission that the lease was a signed, legally enforceable document save for one proviso: the assertion that the lease was void *ab initio* as a matter of public policy because electronic bingo is illegal in Alabama. Accordingly, at the Rule 56 stage, Plaintiffs are judicially estopped from controverting the formation, entry, and execution of the lease.

**B.      The Contract Is Not *Void Ab Initio***

**1.      Introduction to the Use of Premises Clause**

Both parties argue that the lease's Use of Premises provision supports their respective motion for summary judgment. (Docs. # 35, 38). The clause provides that "the Demised Premises shall be occupied and used for the sole purposes of: **Electronic Bingo *and for no other purpose without Lessor's prior written consent***. Lessor makes no warranty or representation that the Demised Premises can be used for the Permitted Use." (Doc. # 36-1 at 7) (emphasis in original). To be sure, this is an important clause. But, as explained below, it is not the only relevant provision of the lease.

Even on its own terms, this clause does not support Plaintiffs' contention that electronic bingo is the only use contemplated in the lease. In addition, when the Use of Premises provision is read in conjunction with the entirety of the lease, the lease's language, in its totality, contemplates a purpose beyond electronic bingo. As explained further below, the court concludes that the objective purpose of the lease was not solely for the operation of electronic bingo; thus, the lease is not void *ab initio*.

### 2.      Purpose of the Contract

"It is elementary that it is the terms of the written contract, not the mental operations of one of the parties, that control its interpretation." *Harbison v. Strickland*, 900 So .2d 385, 391 (Ala. 2004) (internal citations omitted). In other words, the objective manifestations of the parties as evidenced by the express words of the contract control a dispute rather than one party's subjective intent. *Id*. A court should read the contract as it is clearly written after giving the terms their clear and plain meaning. *Harbison*, 900 So. 2d at 385 (internal citations omitted).

To determine the lease's objective purpose, the court must read the instrument as a whole. *Advance Tank & Const. Co., Inc. v. Gulf Coast Asphalt Co., L.L.C.*, 968 So. 2d 520, 526 (Ala. 2006). And, if possible, the court should interpret each provision in a manner that gives effect to the contract's general purpose. *Id.* When a court reads a contract in this manner, it avoids distorting the contract's meaning by giving undue force to a single word or phrase. *Sullivan, Long & Hagerty v. Southern Elec. Generating Co.*, 667 So. 2d 722, 725 (Ala. 1995) (recognizing that a court should try to reconcile inconsistent parts in a contract and resolve doubt by considering the entire instrument).

Plaintiffs argue that their purpose for entering the lease was to operate an electronic bingo business at the facility. (Doc. # 35 at 3). However, Plaintiffs' subjective purpose is not controlling.

Rather, the court must derive the lease's purpose from the objective manifestations of the parties as evidenced by the clear and plain meaning of the document. To determine the objective purpose of the lease, the court must read the lease as a whole.

Article V ("Use of Premises"), provides that "the Demised Premises shall be occupied and used for the sole purpose of: **Electronic Bingo** _**and for no other purpose without Lessor's prior**_ _**written consent**_." (Doc. # 36-1 at 7) (emphasis in original). Article XI ("Consents") explains that "[a]ny … approval required or allowed by Lessor under this Lease shall not be unreasonably … withheld based on what is commercially reasonable." (Doc. # 36-1 at 19). When these two provisions are read together, the purpose of the lease may extend to all commercially reasonable operations so long as prior written consent is obtained.

Article XX ("Assignment") also shows that the purpose of the lease includes more than just hosting electronic bingo. The clause states, "Lessee shall have the right, without Lessor approval, to sublet the Demised Premises to the dental practice entity that will conduct business from the Demised Premises." (Doc. # 36-1 at 28-29). Put simply, the lease provides that Papa Air has the right to sublet the premises to a dental practice even without Defendant's approval.[6]

The lease also contains a severance clause, which reads:

> If any term or provision of this Lease or the application thereof to any person or circumstance shall to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Lease shall be valid and be enforced to the fullest extent permitted by law.

(Doc. # 36-1 at 44). Under this clause, even assuming that the form of electronic bingo contemplated in the lease is illegal, the parties have already agreed that the provision about the

---

[6] It can be said that both playing bingo and practicing dentistry require patience, but they are wholly different activities.

11

lease's purpose would be severed from the lease and the remainder of the instrument would be enforceable.

Therefore, a review of the totality of the lease's plain language shows that its objective purpose is for Papa Air to use the premises for bingo, or for some other commercially reasonable operation (after seeking Defendant's approval), or to assign the lease to a dental practice without Defendant's approval. This interpretation follows from reading the instrument as a whole and avoids placing undue force on the word "sole" in the Use of Premise provision.

### 3. *Lucky Jacks Entertainment Center, LLC v. Jopat Bldg. Corp.*, 32 So. 3d 565 (2009)

Plaintiffs argue that "[t]he Alabama Supreme Court has directly addressed this identical fact pattern," regarding a lease and guaranty agreement that was ultimately determined to be against the state's public policy. In *Lucky Jacks*, the court concluded that a lease agreement to operate a video sweepstakes center was void in its entirety. However, *Lucky Jacks* is easily distinguishable from this controversy.

First, while the lease in *Lucky Jacks* contained a similar use of premises provision, the *Lucky Jacks* court did not analyze the entire clause. The lease in *Lucky Jacks* provided: "The Premises shall be used and occupied for the purpose of operating a video sweepstakes center and for no other purpose without the prior written consent of Lessor." *Lucky Jacks*, 32 So. 3d at 566. However, the court expressly noted that the parties had not presented an alternative-use argument to the trial court. *Id.* at 568 n.2. Therefore, the court refused to consider the effect of the language: "and for no other purpose without the prior written consent of Lessor."  That is not the situation here.

Here, Defendant has made a timely (and persuasive) argument that the lease clearly provides for alternative purposes. As discussed above, the lease allows Papa Air to (1) use the

premises for any commercially reasonable operation after seeking the written approval of

Defendant (which could not be unreasonably withheld) or (2) assign the lease to a dental practice

(even without the approval of Defendant). Therefore, the current dispute is much different than

that in *Lucky Jacks*, where the court reasoned that "it is undisputed that the lease agreement

between [the parties] *required* that the premises be used for the operation of a video-sweepstakes

center."[7] *Id.* at 569 (emphasis added).

Moreover (and in the alternative), the lease in *Lucky Jacks* did not include a severance

provision. The lease at issue here contains such a clause. This language constitutes evidence that

the parties privately negotiated and resolved the issue of what happens when it is discovered that

a provision in the lease is "invalid or unenforceable": the remainder of the lease is to remain in

effect "to the fullest extent permitted by law." As a result, this clause essentially operates to sever

"electronic bingo" from the Use of Premises provision. That leaves those remaining purposes --

commercially reasonable ventures with Lessor's written consent or subletting the facility to a

dental practice without Lessor's consent -- in effect.

The lease in question here is dissimilar from those at issue in the Alabama Supreme Court

cases on which Plaintiffs rely. The court concludes that the lease in this case is not void *ab initio*.[8]

---

[7] The multiple uses contemplated in this lease also distinguish the current action from *Walker v. Southern Trucking Corp.*, 219 So. 2d 379 (Ala. 1969). The Alabama Supreme Court considered *Walker* "under an agreed statement of facts." 219 So.2d at 552. The court reasoned "[w]here, however, the lease permits the tenant to use the premises for only a *single* purpose, a prohibition against that use will … annul or terminate the contract and relieve the tenant of obligation thereunder." 219 So. 2d at 381 (emphasis added). In this case, there is no one single objective purpose in the lease.

This action is also distinguishable from *Ex parte Rice*, 61 So. 2d 7 (Ala. 1952). To begin, *Rice* was a mandamus appeal that sought an order to compel answers to interrogatories. 61 So. 2d at 11. Second, the case involved the alleged long-term violations of the Clayton Act, rather than a lease in which time was of the essence. *Id.* at 9-11. Finally, the multiple purposes (as well as the severance clause) differentiate the lease in this action from the language at issue in *Rice* that is quoted in *Lucky Jacks*: "[W]hen premises are leased for the express purpose of enabling a lessee to accomplish an unlawful purpose, the agreement is void." *Id.* at 9.

[8] The court notes that Defendant also argues that there is a distinction between electronic bingo and electronic bingo *for money or prizes*. (Doc. # 40 at 21-24). In March 2019, Askew was negotiating two separate leases: a lease

**C.      Plaintiffs Breached Their Obligations Under the Lease and Personal Guaranty**

"The elements of a breach-of-contract claim under Alabama law are (1) a valid contract

binding the parties; (2) [one party's] performance under the contract; (3) the [other party's]

nonperformance; and (4) resulting damages." *Dupree v. PeoplesSouth Bank*, 308 So.3d 484, 490

(Ala. 2020). As established above, there was an enforceable lease between the parties. The lease

was valid despite the reference to electronic bingo in the Use of Premises provision. Also, there is

no dispute that Defendant performed its obligations (*i.e.*, the premises were available for Plaintiffs

to occupy) under the lease.

Papa Air's only argument that it did not breach the lease relies on its overly broad

interpretation of Article X ("Unavoidable Delays"). That section provides:

> The provisions of this Article X shall be applicable if there shall occur … any: (a)
> strike(s), lockout(s), or labor dispute(s); (b) inability to obtain labor or materials or
> reasonable substitutes thereof; or (c) acts of God, governmental restrictions,
> regulations or controls, enemy or hostile governmental action, civil commotion,
> insurrection, revolution, sabotage, or fire or other casualty, acts or other conditions
> similar to enumerated in the foregoing items (a), (b), and (c) beyond the reasonable
> control of the Lessor or Lessee (hereinafter "Unavoidable Delays").  Lessor nor
> Lessee shall be not chargeable with, liable for, or responsible to the other for
> anything or in any amount for any Unavoidable Delay, and the Unavoidable Delay
> shall not be deemed a breach of or default in the performance of this Lease, it being
> specifically agreed that any time limit provision contained in this lease, shall be
> extended for the same period of time lost by said Unavoidable Delay; provided,
> however, that in the event such Unavoidable Delay shall materially impair Lessee
> from operating its business within the Demised Premises for at least one (1) year
> from the day of such Unavoidable Delay commenced, then the parties may agree
> to terminate this Lease.  Any rent due during such Unavoidable Delay shall abate
> to the extent Lessee is impaired from operating its business with the Demised
> Premises.

---

in Adamsville and the contested lease in this action. (*Id.* at 13). The Adamsville lease specified that the purpose of the
lease was "for the operation of electronic bingo games for prizes or money" while the lease contested in this action
was for "electronic bingo." (*Id.* at 22). Because the court concludes that the lease is not limited to electronic bingo, it
declines to further analyze the possible distinction between the Adamsville lease and the contested lease.

(Doc. # 36-1 at 18-19). Papa Air urges that the cease-and-desist letters from the local district attorney and the Attorney General constitute "governmental restrictions, regulations or controls" that "materially impair[ed] Lessee from operating its business within the Demised Premises." (Doc. # 42 at 7-9). However, Papa Air's argument is off the mark.

First, when the phrase "governmental restrictions, regulations or controls" is read in context, that terminology does not refer to a cease-and-desist letter specifically targeting electronic bingo operators. Rather, the term contemplates indiscriminate events that would affect the total use of the building or surrounding area (*e.g.*, referencing such matters as a fire, acts of God, civil commotion, revolution). Second, Plaintiffs are again too narrowly defining the business they may conduct under the lease. Again, when the lease is read as a whole, the contemplated purpose is for a commercially reasonable operation after seeking Defendant's approval or assignment of the lease to a dental practice without Defendant's approval.

In fact, the Rider to the Lease contemplated Plaintiffs' ability to <u>later</u> terminate the lease if a municipal ordinance, county ordinance, zoning law, legislative action, judicial ruling, or lawful gubernatorial executive order changed to prohibit bingo operations at the premises. (Doc. # 36-1 at 53). That is, the parties agreed that Plaintiffs would have the right to terminate the lease following the thirty-sixth full month of the term (provided Papa Air was not in default or caused the action in question to take place). Therefore, this provision of the Rider, rather than the Unavoidable Delay provision, speaks to the specific circumstance of the relevant government action preventing electronic bingo from operating at the premises.

It is not disputed that Papa Air only paid a portion of the initial rent payment; that Papa Air did not make any monthly base rent payments or additional rent payments; that Papa Air failed to pay late charges; that Papa Air commenced construction at the premises without submitting plans

prepared by a licensed architect; [9] and that Askew did not fulfill his obligations under his personal guarantee of the lease. Therefore, Defendant has established as a matter of law each of the elements of a breach of contract claim. To determine the extent of damages, the court will conduct further appropriate proceedings at a later date.

## IV.    Conclusion

Plaintiffs' Motion for Summary Judgment (Doc. # 34) is due to be granted in part and denied in part. The motion is due to be denied to the extent it seeks dismissal of Counts One, Three, and Four (Breach of Contract, Breach of Personal Guaranty, and Declaratory Judgment) of the Counterclaim. The motion is due to be granted to the extent it seeks dismissal of the claim in Count Two (Trespass) of the Counterclaim.

Defendant's Motion for Summary Judgment (Doc. # 37) is due to be granted in part and denied in part. Defendant's motion is due to be granted as to the claims in Counts One, Three, and Four (Breach of Contract, Breach of Personal Guaranty, and Declaratory Judgment) of the Counterclaim. Defendant's motion is due to be denied as to the claim in Count Two (Trespass).

Plaintiffs' Motion to Strike (Doc. # 50) is due to be denied as moot.

A separate order in accordance with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this March 14, 2022.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

---

[9] As noted by Defendant, because the lease is valid and enforceable, its trespass claim against Papa Air is instead actionable under the breach of contract claim. (Doc. # 40 at 24-25). Accordingly, regarding the trespass claim, Plaintiff is entitled to summary judgment. Regarding the breach of contract claim on this issue, Papa Air claims that it had permission -- but not specifically written permission -- from Ian Harrison (a representative of Defendant) to begin alterations to the premises (Doc. # 36-2 at 28, 30); however, it is undisputed that Papa Air failed to submit required plans by a licensed architect before commencing those alterations. (Doc. # 39-8 at 82).